IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32799-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN MANUAL REYES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — After a jury found Juan Reyes guilty of first degree robbery, he was sentenced to 40 months in prison and 36 months of community custody. The sentencing court imposed, as costs, $489.18 in defense investigator fees advanced by the State. Mr. Reyes did not object. He now appeals the term of community custody and the legal financial obligation (LFO).

The State concedes that only "serious violent offense[s]" as defined by the Sentencing Reform Act of 1981, chapter 9.94A RCW, subject an offender to a three year sentence to community custody, and first degree robbery is not a "serious violent offense." RCW 9.94A.030(45); RCW 9.94A.701(1). First degree robbery, a class A felony, is a "violent offense," and is subject to an 18-month sentence to community custody. RCW 9.94A.030(54)(a)(i); RCW 9A.56.200(2); RCW 9.94A.701(2). We

accept the State's concession and remand with directions to correct the term of community custody.

The only remaining issue is whether imposing the cost of the defense investigator as part of Mr. Reyes's judgment and sentence violates Washington statutes or the United States or Washington Constitutions. For reasons set forth below, we conclude that it does not, and we affirm that legal financial obligation.

## ANALYSIS

"Whenever a person is convicted in superior court, the court may order the payment of a legal financial obligation as part of the sentence." RCW 9.94A.760(1). Among costs that fall within the statutory definition of "legal financial obligation" are "court-appointed attorneys' fees, and costs of defense . . . assessed to the offender as a result of a felony conviction." RCW 9.94A.030(30). RCW 10.01.160(2) describes the scope and limitations on the type of costs that can be imposed on an offender, and provides that they "shall be limited to expenses specially incurred by the state in prosecuting the defendant" and "cannot include expenses inherent in providing a constitutionally guaranteed jury trial."

Mr. Reyes represents that his trial lawyer obtained court authorization to hire the investigator whose services accounted for the $489.18 under "CrR 3.1(f)(1) [which] provides: 'A lawyer for a defendant who is financially unable to obtain investigative, expert, or other services **necessary to an adequate defense** in the case may request them

2

by a motion to the court.'" Br. of Appellant at 6. From that, he argues that his investigator's services were "inherent in providing a constitutionally guaranteed jury trial" within the meaning of RCW 10.01.160(2) and therefore not chargeable as costs. He also suggests that State payment of necessary investigative services performed for an indigent defendant is required by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

We examined the meaning of the phrase "expenses inherent in providing a constitutionally guaranteed jury trial" in RCW 10.01.160(2) in *State v. Diaz-Farias*, observing that no reported Washington decision had construed the prohibition on imposing such expenses "or attempted to reconcile it with the legislature's provision elsewhere that some constitutionally required expenditures by the State *can* be imposed on criminal defendants." __ Wn. App. __, 362 P.3d 322, 326 (2015). Following case law in Michigan and Oregon, from whose cost-reimbursement statutes RCW 10.01.160 was copied, we concluded that in using the phrase "expenses inherent in providing a constitutionally guaranteed jury trial," the legislature "intended to encompass only expenses relating to a defendant's jury trial itself, not expenses associated with other constitutional rights that apply at the time of trial." *Diaz-Farias*, 362 P.3d at 327. Accordingly, RCW 10.01.160(2) does not exclude the cost of a defense investigator from costs of defense that can be imposed on an offender.

3

*Diaz-Farias* also observed that it was determined long ago that Washington's cost reimbursement statutes "satisfy the requirements of a constitutional cost and fee recovery regime." *Id.* at 325 (citing *State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992)). Washington statutes include requirements that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them," RCW 10.01.160(3), and provide for remission of costs or modification of the method of payment if the court determines after the sentence is imposed that the costs "will impose a manifest hardship on the defendant or his family." RCW 10.01.160(4); *and see Curry*, 118 Wn.2d at 915-16 (identifying constitutional requirements that are met by Washington statutes).

Because defense investigation costs imposed by the court fall within the statutory definition of "legal financial obligations," are not excluded from recovery by RCW 10.01.160(2), and Washington has adopted a constitutional cost recovery regime, the trial court did not err in imposing the cost.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Reyes raises two: that (1) he was not given proper clothing for trial, and (2) he was required to wear a wrist band that identified him as an inmate.

*Trial clothing.* Mr. Reyes contends that he was given only his own street clothing to wear during trial, which he contends was dirty, inappropriate, and prejudiced the jury against him.

4

We note first that this challenge depends on matters outside our record. We have no information whether Mr. Reyes requested some reasonable accommodation as to his attire that was denied,[1] or just how dirty and inappropriate his clothing was. As a result, we cannot consider any alleged error, abuse and prejudice in this direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The issue is more properly raised in a Personal Restraint Petition.

We also observe that Mr. Reyes has not cited any authority supporting a right to wear clothing of his choice to trial. Street clothes, even if dirty, do not imply or suggest guilt. *Johnson v. State*, 838 S.W.2d 906, 909 (Tex. App. 1992).

*Wrist band.* Likewise, there is nothing in our record that suggests that Mr. Reyes brought his concern about his jail identification wristband to the attention of the court, or that jurors could even see the wristband and recognize what it was. Here again, the record is insufficient for review on direct appeal.

We also point out that other jurisdictions have rejected due process challenges to an inmate's having worn a wristband during trial absent evidence that the wristband affected the outcome of the trial, often noting that institutions other than jails use wristbands for identification. *E.g., Morris v. State*, 696 S.W.2d 616, 621 (Tex. App.

---

[1] Even objection to being tried in identifiable prison clothes can be waived. *Estelle v. Williams*, 425 U.S. 501, 512-13, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976).

No. 32799-0-III
*State v. Reyes*

1985); *State v. Johnson*, 128 N.C. App. 361, 365, 496 S.E.2d 805 (1998); *People v. Williams*, 33 Cal. App. 4th 467, 475-76, 39 Cal. Rptr. 2d 358 (1995).

We affirm the LFO and remand the case for the limited purpose of correcting the term of community custody.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

6